1  Julie A. Hamill (272742)
   julie@justiceca.com
2  California Justice Center, APC
   904 Silver Spur Road, #287
3  Rolling Hills Estates, CA 90274
4  424-265-0529

5  Jeffrey M. Schwab (pro hac vice to be filed)
   jschwab@ljc.org
6  Liberty Justice Center
   7500 Rialto Blvd.
7  Suite 1-250
   Austin, TX 78735
8  512-481-4400

9
   Attorneys for Plaintiff
10 CALIFORNIA POLICY CENTER, INC.

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14 CALIFORNIA POLICY CENTER, INC. | Case No. |
| 15        Plaintiff, | |
| 16     v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| 17 LILIA GARCIA-BROWER, *in her official capacity as the Labor Commissioner in* | |
| 18 *the Division of Labor Standards Enforcement of the California* | **ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** |
| 19 *Department of Industrial Relations,* | |
| 20        Defendant. | |

21      1.      This case is about content-based restrictions on speech imposed by the

22 State of California against employers, in violation of the First and Fourteenth

23 Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

24

- 1 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2.    The First Amendment protects the free-speech rights of both employees and employers—including an employer's right to speak to employees about matters of importance to the employer.

3.    Nonetheless, the State of California has enacted a law, misleadingly titled the "California Worker Freedom from Employer Intimidation Act" ("the Act"), that forbids employers from speaking to their employees about "religious or political matters" if listening or attending a meeting in which such matters are communicated is a condition of their employment—even when such matters are relevant to the employer's business.

4.    The Act defines "political matters" broadly to include speech "relating to elections for political office, political parties, legislation, regulation, and the decision to join or support any political party or political or labor organization."

5.    Plaintiff California Policy Center, Inc. ("CPC") is a 501(c)(3) nonprofit organization with a mission to secure a more prosperous future for all Californians. To do this, CPC engages in research and communication related to public policy, primarily focused on the areas of education reform, workplace freedom, government transparency, and governance.

6.    Before the Act went into effect, CPC regularly conducted mandatory staff meetings at which the organization's views on issues of legislation, regulation, and the decision to join a labor union, among other things, were discussed.

7.    But for the Act, CPC would continue its practice of holding such mandatory meetings that include political matters.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8.      This restriction on CPC's ability to speak to its employees about the very subject matter of the organization's mission violates CPC's right to free speech under the First Amendment.

9.      CPC therefore seeks declaratory relief and preliminary and permanent injunctive relief against the Labor Commissioner in the Division of Labor Standards Enforcement of the California Department of Industrial Relations—the government official charged with enforcing the Act—to protect its right to freedom of speech.

## PARTIES

10.     Plaintiff California Policy Center, Inc. is a 501(c)(3) nonprofit organization incorporated in California, with its office in Tustin, California.

11.     Defendant Lilia Garcia-Brower is the Labor Commissioner in the Division of Labor Standards Enforcement of the California Department of Industrial Relations and is sued in her official capacity. The Labor Commissioner is tasked with enforcing the California Worker Freedom from Employer Intimidation Act, including investigating an alleged violation, ordering appropriate temporary relief, and issuing citations for violations.

## JURISDICTION AND VENUE

12.     This case raises claims under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

13.     Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Central District of California. 28 U.S.C. § 1391(b)(2).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## FACTUAL BACKGROUND

### California's Ban on Employer Political and Religious Speech

14.    California Senate Bill 399 ("SB 399"), referred to herein as "the Act," adds Chapter 9 to Part 3 of Division 2 of the California Labor Code, commencing with California Labor Code section 1137, was signed into law by Governor Gavin Newsom on September 27, 2024, and became effective January 1, 2025.

15.    The Act prohibits employers from "subject[ing], or threaten[ing] to subject, an employee to discharge, discrimination, retaliation, or any other adverse action" for refusing to attend meetings or receive communications from the employer where the purpose is to "communicate the employer's opinion about religious or political matters." Cal. Lab. Code § 1137(c).

16.    The Act defines "political matters" as "matters relating to elections for political office, political parties, legislation, regulation, and the decision to join or support any political party or political or labor organization." Cal. Lab. Code § 1137(b)(3).

17.    The Act defines "religious matters" as "matters relating to religious affiliation and practice and the decision to join or support any religious organization or association." Cal. Lab. Code § 1137(b)(4).

18.    The Act provides several exceptions.

19.    The Act allows employers to communicate to employees "information that is necessary for those employees to perform their job duties." Cal. Lab. Code § 1137(g)(2).

- 4 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20.   Religious corporations, entities, associations, educational institutions, or societies exempt from the requirements of Title VII of the Civil Rights Act of 1964 or employment discrimination protections of state law are exempt from the Act's ban on mandatory meetings or communications with respect to speech on religious matters to employees who perform work connected with the activities undertaken by that organization. Cal. Lab. Code § 1137(h)(1).

21.   The Act also exempts political organizations or parties from the ban on mandatory meetings or communications about political matters where the purpose is to communicate the employer's political tenets or purposes. Cal. Lab. Code § 1137(h)(2).

22.   The Act exempts an employer from "communicating to its employees any information that the employer is required by law to communicate, but only to the extent of that legal requirement," Cal. Lab. Code § 1137(g)(1), and from "requiring employees to undergo training to comply with the employer's legal obligations, including obligations under civil rights laws and occupational safety and health laws," Cal. Lab. Code § 1137(h)(5).

23.   The Act allows a "nonprofit, tax-exempt training program requiring a student or instructor to attend classroom instruction, complete fieldwork, or perform community service hours on political or religious matters as it relates to the mission of the training program or sponsor," Cal. Lab. Code § 1137(h)(4), an "educational institution requiring a student or instructor to attend lectures on political or religious matters that are part of the regular coursework at the institution," Cal. Lab. Code § 1137(h)(3), and communications by "an institution

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  of higher education" to "its employees that are part of coursework, any symposia,

2  or an academic program at that institution," Cal. Lab. Code § 1137(g)(3).

3      24.    The Act also allows a public employer to communicate to its employees

4  "any information related to a policy of the public entity or any law or regulation

5  that the public entity is responsible for administering," Cal. Lab. Code

6  § 1137(g)(4), and to hold a new employee orientation, Cal. Lab. Code

7  § 1137(h)(6).

8      25.    The Act provides for enforcement by aggrieved employees, or their

9  exclusive representatives, and by the Labor Commissioner. Cal. Lab. Code

10  § 1137(e), (f).

11      26.    Section 1137(f) of the Act allows "any employee who has suffered a

12  violation" of the Act to bring a "civil action in a court of competent jurisdiction for

13  damages caused by that adverse action, including punitive damages." And "an

14  employee or their exclusive representative may petition the superior court in any

15  county wherein the violation in question is alleged to have occurred, or wherein the

16  person resides or transacts business, for appropriate temporary or preliminary

17  injunctive relief."

18      27.    Even if an aggrieved employee does not bring an action, the Act further

19  empowers the Labor Commissioner to enforce the Act, "including investigating an

20  alleged violation, and ordering appropriate temporary relief to mitigate a violation

21  or maintain the status quo pending the completion of a full investigation or

22  hearing . . . , including issuing a citation against an employer who violates this

23  section and filing a civil action." Cal. Lab. Code § 1137(e).

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

28.     The Act provides that "[i]n addition to any other remedy, an employer who violates this section shall be subject to a civil penalty of five hundred dollars ($500) per employee for each violation." Cal. Lab. Code § 1137(d).

**Injury to Plaintiff California Policy Center**

29.     The Act bans CPC from communicating with its employees during mandatory meetings about legislation, regulations, and decisions to join a labor union—even though creating legislative and regulatory proposals is one of CPC's principal purposes.

30.     CPC is a research organization that publishes policy research and trains local elected officials on a variety of political topics, including education reform, workplace freedom, government transparency, and constitutional governance.

31.     Until the Act went into effect, CPC held mandatory staff meetings every week, except holidays, for all staff, with no exceptions made for job title or position.

32.     CPC also has regularly-scheduled team meetings and holds strategy meetings scheduled as needed that are mandatory for certain staff.

33.     Before the Act went into effect, CPC held all-staff retreats, and all staff, regardless of position, were required to attend.

34.     At the mandatory meetings and mandatory retreats, CPC has discussed, among other things, topics such as government financing at the state and local level, legislation that has been proposed or enacted at the state and local level, activities of labor unions in California to restrict worker rights, the rights of public sector workers to opt out of paying union dues, political choices involving

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    infrastructure for water and power, compensation and pensions paid to public

2    employees, legislation relating to free speech, policy failures by California political

3    leadership, and policy solutions that would lead to individual liberty and prosperity

4    in California.

5        35.    The topics discussed during these meetings often include "political

6    matters" as defined by the Act because they relate to "legislation, regulation, and

7    the decision to join or support" a public-sector labor union. Cal. Lab. Code

8    § 1137(b)(3).

9        36.    It is important for the functioning of CPC to communicate about political

10    matters—including discussions of legislation and regulations—with its employees

11    and ensure that their employees listen to such communications. Often the most

12    efficient way of doing so is by holding mandatory meetings.

13        37.    CPC believes it is important to discuss its work with all its employees,

14    regardless of whether a specific employee is working on a specific topic. Such

15    discussions improve staff morale and team cohesion and enable staffers not

16    working on a specific policy-related matter to express their ideas or new

17    perspective on that matter.

18        38.    CPC's speech does not qualify for one of the several exemptions set forth

19    in the Act. *See* Cal. Lab. Code § 1137(g), (h).

20        39.    CPC would continue holding mandatory meetings and retreats during

21    which "political matters" as defined by the Act, including legislation and

22    regulations, are discussed but for the prohibitions set forth in the Act because it

23    fears enforcement of the Act against it. The Act chills CPC's political speech by

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  imposing the threat of legal penalties on CPC for speech which it has engaged in

2  regularly and wishes to continue to engage in the future.

## COUNT I

**The ban on employer speech to employees about "political matters" in**

**SB 399 violates the First Amendment's guarantee of freedom of speech.**

6      40.    The allegations contained in all preceding paragraphs are incorporated

7  herein by reference.

8      41.    "[A]bove all else, the First Amendment means that government has no

9  power to restrict expression because of its message, its ideas, its subject matter or

10  its content." *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95-96 (1972).

11      42.    A law is content based if the law "'on its face' draws distinctions based

12  on the message a speaker conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163

13  (2015) (*quoting Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563–64 (2011)).

14      43.    "Content-based regulations are presumptively invalid" and thus subject to

15  strict scrutiny analysis. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992); *United*

16  *States v. Alvarez,* 567 U.S. 709, 717 (2012) (plurality opinion). Content-based

17  restrictions on political and religious speech warrant such scrutiny because they

18  "are especially likely to be improper attempts to value some forms of speech over

19  others, [and] are particularly susceptible to being used by the government to distort

20  public debate." *City of Ladue v. Gilleo*, 512 U.S. 43, 60 (1994) (O'Connor, J.,

21  concurring).

22      44.    The Act is a content-based regulation because it regulates speech based

23  on its content: an employer is prohibited from communicating political speech or

24

1  religious speech to its employees at mandatory meetings or by requiring the

2  employees to listen to such speech.

3      45.    To know whether an employer violates the Act, the government must

4  discern the content of the employer's speech.

5      46.    Defendant has no compelling governmental interest in prohibiting

6  employers from communicating political or religious matters to employees.

7      47.    The Act is not narrowly tailored to serve any purported compelling

8  government interest.

9      48.    The Act therefore violates the CPC's First Amendment rights, and CPC

10  is entitled to injunctive relief because it is irreparably harmed and has no adequate

11  remedy at law.

12                          **PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiff respectfully requests that this Court grant the following

14  relief:

15      A.    Enter a judgment declaring that the prohibition on employer speech to

16  employees about "political matters" at mandatory meetings contained in Cal. Lab.

17  Code § 1137 violates the First Amendment to the United States Constitution, both

18  on its face and as applied to Plaintiff California Policy Center.

19      B.    Preliminarily and permanently enjoin Defendant from enforcing Cal.

20  Lab. Code § 1137;

21      C.    Award Plaintiff its reasonable costs, expenses, and attorneys' fees

22  pursuant to 42 U.S.C. § 1988 and any applicable law; and

23      D.    Award Plaintiff any additional relief the Court deems just and proper.

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Dated: February 11, 2025

Respectfully submitted,

**CALIFORNIA POLICY CENTER, INC.**

By: /s/ Julie Hamill

Attorneys for Plaintiff

Julie A. Hamill
California Justice Center, APC
904 Silver Spur Road, #287
Rolling Hills Estates, CA 90274
424-265-0529
julie@justiceca.com

Jeffrey M. Schwab*
Liberty Justice Center
7500 Rialto Blvd
Suite 1-250
Austin, TX 78735
512-481-4400
jschwab@ljc.org

* motion for pro hac vice admission pending

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF