ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN A. LISKA
Deputy Attorney General
State Bar No. 315994
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3916
Fax: (415) 703-5480
E-mail: Kristin.Liska@doj.ca.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**CALIFORNIA POLICY CENTER, INC.,**

Plaintiff,

**v.**

**LILIA GARCIA-BROWER, in her official capacity as the Labor Commissioner in the Division of Labor Standards Enforcement of the California Department of Industrial Relations,**

Defendant.

Case No. 8:25-cv-00271-MWC-SK

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Date: July 11, 2025
Time: 1:30 p.m.
Courtroom: 6A
Judge: The Honorable Michelle Williams Court
Trial Date: Not scheduled
Action Filed: 2/11/2025

## TABLE OF CONTENTS


Page

Introduction ..... 1

Argument ..... 1

- I. Plaintiff Lacks Standing ..... 1
- II. This Matter Is Not Ripe ..... 5
- III. Plaintiff Does Not State a Valid First Amendment Claim ..... 6
  - A. SB 399 Is a Regulation of Conduct, Not Speech ..... 6
  - B. SB 399 Passes Muster Under Intermediate Scrutiny, if Applicable ..... 8

Conclusion ..... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Freedom Def. Initiative v. King Cnty.*
796 F.3d 1165 (9th Cir. 2015) .......... 9

*Bonnell v. Lorenzo*
241 F.3d 800 (6th Cir. 2001) .......... 9

*Honeyfund.com, Inc. v. Governor of Florida*
94 F.4th 1272 (11th Cir. 2024) .......... 7

*Kumar v. Koester*
131 F.4th 746 (9th Cir. 2025) .......... 1

*People v. Knowles*
105 Cal. App. 5th 757 (2024) .......... 3

*Rowan v. U.S. Post Office Dep't*
397 U.S. 728 (1970) .......... 6

*Rumsfeld v. F. for Acad. & Institutional Rts.*
547 U.S. 47 (2006) .......... 6, 7

*Sorrell v. IMS Health, Inc.*
564 U.S. 552 (2011) .......... 6

*Tiktok, Inc. v. Garland*
145 S. Ct. 57 (2025) .......... 8

*Walker v. Superior Court*
47 Cal. 3d 112 (1988) .......... 3

*Wasatch Prop. Mgmt. v. Degrate*
35 Cal. 4th 1111 (2005) .......... 2

*Williams-Yulee v. Fla. Bar*
575 U.S. 433 (2015) .......... 10

## TABLE OF AUTHORITIES (continued)

Page

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment ... *passim*

**STATUTES**

2024 Cal. Stat., ch. 670 (Senate Bill 399) ... *passim*

California Labor Code
§ 1101 ... 3
§ 1102 ... 3
§ 1137(c) ... 5, 6
§ 1137(g)(2) ... 4
§ 1137(h)(1) ... 3
§ 1137(h)(2) ... 2
§ 9250(q) ... 2

California Public Contract Code
§ 2601 ... 3

California Revenue and Taxation Code
§ 23701r(e)(1) ... 2, 3

Florida Statutues
§ 760.10(8) ... 7

**OTHER AUTHORITIES**

Eugene Volokh, *Private Employees' Speech and Political Activity: Statutory Protection Against Employer Retaliation*, 16 Tex. Rev. L. & Pol. 295 (2012) ... 9

James D. Nelson, *Corporate Disestablishment*, 105 Va. L. Rev. 595 (2019) ... 9

*Political*, Black's Law Dictionary (12th ed. 2024) ... 2

## INTRODUCTION

Plaintiff California Policy Center is a nonprofit political activist group that challenges Senate Bill 399 (SB 399) as a violation of the First Amendment. But its challenge to SB 399 flounders at the beginning because plaintiff lacks standing. As the very dispute between the parties about the scope of the political organization and job duties exemptions illustrates, plaintiff has not articulated a concrete plan to engage in conduct in violation of SB 399 or a concrete risk of enforcement and therefore lacks standing for this pre-enforcement challenge. In any event, plaintiff has failed to state a valid First Amendment claim. SB 399 is a regulation of conduct—the grounds on which an employer may discipline an employee—not of speech. The law forbids no speech; it only prohibits compelled listening. The First Amendment includes no right to force others to listen to one's words. This Court should thus dismiss this action with prejudice.

## ARGUMENT

### I. PLAINTIFF LACKS STANDING

In order for a plaintiff to have standing for a pre-enforcement challenge, they must allege that they have (1) "'an intention to engage in a course of conduct arguably affected with a constitutional interest'" that is (2) "'proscribed by a statute'" and (3) that "'there exists a credible threat of prosecution thereunder.'" *Kumar v. Koester*, 131 F.4th 746, 752 (9th Cir. 2025) (quotation omitted). Plaintiff has not so alleged because the meetings plaintiff wishes to compel its employees to attend implicate two exemptions of SB 399, thereby undermining any intent to engage in conduct proscribed by SB 399 and any credible threat of prosecution under SB 399. *See* Mot. to Dismiss at 6-10. In response, plaintiff argues it has standing because neither exemption applies. Its arguments are not persuasive.

First, the political organization exemption exempts from SB 399's prohibition a "political organization or party requiring its employees to attend an employer-sponsored meeting or to participate in any communications with the employer or its

agents or representative, the purposes of which is to communicate the employer's political tenets or purposes." Cal. Labor Code § 1137(h)(2). This is a case-specific exemption because it only applies when the purpose of a meeting is to communicate the employer's political tenets or purposes. It is therefore not possible to determine whether the exemption applies categorically to plaintiff. However, given the nature of plaintiff's work and the meetings it wishes to require employees to attend, plaintiff's desired conduct implicates this exemption. *See* Mot. to Dismiss at 7-8.

Plaintiff contends that it is not a political organization, and thus the political organization exemption categorically cannot apply. Not so. As defendant explained in her motion to dismiss, the commonsense and plain meaning of "political organization" is not limited to those engaged in partisan electoral politics. Rather, the ordinary meaning of "political" is relating to the affairs or conduct of the government *as a whole*, not simply the election of officials. *See, e.g.*, *Political*, Black's Law Dictionary (12th ed. 2024) (defining "political" as "[o]f, relating to, or involving politics; pertaining to the conduct of government"); *see also* Mot. to Dismiss at 7 n.2 (further definitions of "political").[1] Thus, the plain, commonsense definition of "political organization" encompasses groups that are engaged in the political process even if they are not dedicated to a candidate's election.

Plaintiff's argument to the contrary is not persuasive. Instead of relying on dictionary definitions, plaintiff argues that the commonsense meaning of "political organization" is the statutory definition of the term in the California Revenue and Taxation Code. Opp'n at 4-5 (citing Cal. Rev. & Tax. § 23701r(e)(1)). But plaintiff points to nothing in the text or legislative history of SB 399 that indicates the Legislature intended to incorporate the Revenue and Taxation Code definition of "political organization" into SB 399. And the Legislature knows precisely how to do that had it wanted to. *See, e.g.*, Cal. Labor Code § 9250(q) ("'skilled and

[1] "When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word." *Wasatch Prop. Mgmt. v. Degrate*, 35 Cal. 4th 1111, 1121-22 (2005).

trained workforce' has the same meaning as defined in Section 2601 of the Public Contract Code"). Nor did the Legislature define the political organization exemption around the Revenue and Taxation Code's coverage of political organization, in contrast to how it defined the religious entity exemption around the Civil Rights Act's and similar state laws' coverage of religious entities. *See* Cal. Labor Code § 1137(h)(1). The Legislature had clear ways to incorporate the Revenue and Taxation Code definition; it did not use them. There is no basis to conclude that it instead silently smuggled that definition into SB 399.

Nor is it the case, as plaintiff contends (at Opp'n 2-3), that the *in pari materia* canon of statutory construction applies to incorporate the Revenue and Taxation Code definition into SB 399. Under California principles of statutory interpretation, "[d]ifferent statutes should be construed together *only if* they stand in pari materia." *People v. Knowles*, 105 Cal. App. 5th 757, 767 (2024) (quoting *Walker v. Superior Court*, 47 Cal. 3d 112, 124 n.4 (1988)) (emphasis added). Statutes are *in pari materia* "when they relate to the same person or thing, to the same class of person[s] [or] things, or have the same purpose of object." *Id.* (quoting *Walker*, 47 Cal. 3d at 124 n.4) (alterations in original). Section 23701r(e)(1) of the Revenue and Taxation Code concerns the tax-exempt status of election committees; SB 399 concerns the rights of workers not to be compelled to listen to their employer's opinion on politics or religion. The two statutes do not concern the same things or have the same purpose or object and thus do not stand *in pari materia*. *See, e.g.*, *id.* at 767-68 (two statutes governing sentencing were not *in pari materia*). To the extent there is a good statutory analogue to draw on, it is the definition of "political activities" in Labor Code sections 1101 and 1102—which is not limited to organizations supporting a candidate's election. *See* Mot. to Dismiss at 7. Plaintiff's allegations thus implicate the exemption in SB 399 for political organizations.

Plaintiff's allegations also implicate the job duties exemption, as defendant explained in her motion to dismiss. *See* Mot. to Dismiss at 9-10. This exemption makes clear that SB 399 does not prohibit an employer "communicating to its employees any information that is necessary for those employees to perform their job duties." Cal. Labor Code § 1137(g)(2). Plaintiff's main argument to the contrary is that the meetings it wishes to require attendance at are not "necessary" but rather only "'important' for the functioning of the organization," and that defendant's interpretation of the statute would mean any "important" meeting is exempt. Opp'n at 8. But defendant is in no way contending that simply because an employer views a meeting as important, it necessarily falls within the scope of the job duties exemption. An employer might deem a meeting that is entirely divorced from an employee's work as "important" or "necessary," such as an employer who believes it is important for employees to vote for a particular candidate or embrace the employer's religious beliefs. That is insufficient to prove that the job duties exemption applies.

Nor is defendant contending that the meetings plaintiff wishes to require attendance at necessarily meet the requirements of the job duties exemption. After all, the applicability of that exemption will turn on specific facts involving specific employees and their specific job duties. *See* Mot. to Dismiss at 9-10. It is impossible at this juncture—without specific facts in front of the Court and the parties—to make any determination about whether the job duties exemption will apply. But it remains true that the mere fact that a meeting may involve a discussion of multiple policy topics does not categorically mean the job duties exemption would not apply for employees who only work on one particular policy topic, *see* Mot. to Dismiss at 8—and that plaintiff's allegations thus implicate the job duties exemption as well as the political organization exemption. Plaintiff has thereby failed to adequately allege an intent to engage in a course of conduct prohibited by SB 399.

Plaintiff has similarly failed to adequately allege a likelihood of enforcement, as defendant explained in her motion to dismiss. This is especially so because SB 399 only applies once an employee has "decline[d] to attend an employer-sponsored meeting or affirmatively decline[d] to participate in, receive, or listen to any communications with the employer." Cal. Labor Code § 1137(c). If an employee voluntarily agrees to attend any meetings or receive any communications, SB 399 has no applicability. Thus, if there is no realistic likelihood of an employee declining to attend a meeting or receive a communication, there is no realistic likelihood that an employer will violate SB 399 or that the law will be enforced against the employer. And it is unclear what harm plaintiff will suffer if it holds the meetings it wishes to and all of its employees decide to voluntarily participate. Plaintiff has provided no basis to believe that would not be the case, particularly given the nature of the work it performs. It has therefore failed to allege a reasonable threat of enforcement exists and lacks standing to challenge SB 399.

## II. THIS MATTER IS NOT RIPE

As defendant explained in her motion to dismiss, this claim is not constitutionally ripe for the same reasons that plaintiff lacks standing. *See* Mot. to Dismiss at 10-11; *supra* at 2-4. This matter is also not prudentially ripe. *See* Mot. to Dismiss at 11. Plaintiff claims the case is prudentially ripe because no further factual development is necessary to rule on its claims. But defendant's precise argument is that this pre-enforcement facial challenge is premature because it depends on further factual development. It is unclear at this juncture whether the meetings that plaintiff desires to require attendance at will even trigger SB 399 (or are exempt) as well as whether an employee would decline to attend a meeting and then face discipline that could trigger SB 399's applicability. This is precisely the sort of case that would benefit from a more tangible factual situation in which to analyze the law's applicability. For that reason, it is not ripe.

## III. Plaintiff Does Not State a Valid First Amendment Claim

SB 399 is not invalid under the First Amendment. The law does not prohibit an employer from saying a single word, only from compelling employees to listen. The First Amendment provides no right to force speech on an unwilling listener.

### A. SB 399 Is a Regulation of Conduct, Not Speech

As defendant explained in her motion to dismiss, SB 399 is a regulation of conduct, not speech. This flows from the statute's plain language: it prohibits subjecting an employee to discipline or threat thereof because the employee declines to attend a meeting or receive communications about an employer's political or religious opinions. Cal. Labor Code § 1137(c). Disciplining an employee is conduct, not speech, and plaintiff does not appear to seriously dispute that. Thus, SB 399 "neither limits what [employers] may say or requires them to say anything." *Rumsfeld v. F. for Acad. & Institutional Rts.*, 547 U.S. 47, 60 (2006). Employers "remain free under the statute to express whatever views they may have" on religious and political matters. *Id.* SB 399 only "affects what [employers] must not *do*." *Id.* (emphasis in original).

That SB 399 is a regulation of conduct is not altered simply because an employer may decide to change what they say at a meeting they wish to require attendance at in response to the law. Employers do not have a First Amendment right to *compel* a listener to listen. *See* Mot. to Dismiss at 15-16 (citing, *inter alia*, *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970)). And "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech. That is why a ban on race-based hiring may require employers to remove 'White Applicants Only' signs; why 'an ordinance against outdoor fires' might forbid 'burning a flag'; and why antitrust laws can prohibit 'agreements in restraint of trade.'" *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566-567 (2011) (citations omitted). And that is why in *Rumsfeld*, the Supreme Court held that the law at issue was a regulation of conduct even though

law schools may have to "send e-mails and post notices on behalf of the military." *Rumsfeld*, 547 U.S. at 61. Such speech was "plainly incidental to the [law's] regulation of conduct." *Id.* at 62. So, too, is any impact that SB 399 may have on an employer's speech incidental to its regulation of the employer's conduct.

The decision in *Honeyfund.com, Inc. v. Governor of Florida*, 94 F.4th 1272 (11th Cir. 2024), is not to the contrary. In *Honeyfund.com*, the court addressed the validity of a Florida statute that prohibited employers from requiring employees to attend training on certain topics, unless the training discussed those topics "in an objective manner without endorsement." *See* Fla. Stat. § 760.10(8). Florida admitted that the law was meant to "protect Floridians from this dangerous and offensive speech—whether they wish to hear it or not." *Honeyfund.com*, 94 F.4th at 1276. The Eleventh Circuit held that this law regulated speech, not conduct, because its purpose was suppressing a disfavored viewpoint: "[i]f Florida disapproves of the message, the meeting cannot be required." *Id.* at 1278. "Under Florida's proposed standard," the court explained, "a government could ban riding on a parade float if it did not agree with the message on the banner" or "pulling chairs into a circle for book clubs discussing disfavored books." *Id.* at 1279. Such "favoritism violates the First Amendment." *Id.*

SB 399 is not about favoring or sanctioning particular messages. Its applicability does not turn on whether California disapproves of the employer's message: an employer is not subject to SB 399 because they sought to advocate for or against unions, encourage employees to vote Democrat or Republican, evangelize for Christianity or atheism, or advanced positions in line with or against the State's views. Rather, SB 399 is about ensuring employees are not *forced* to serve as unwilling listeners on core matters of one's identity (politics and religion) because of their economic dependence on their employer. *See* Mot. to Dismiss at 1-2. Prohibiting an employer from compelling an employee to listen to *any*

discussion of politics or religion without regard to the specific political or religious message or viewpoint expressed is regulating conduct, not speech.

**B. SB 399 Passes Muster Under Intermediate Scrutiny, if Applicable**

Because SB 399 is a regulation of conduct, it does not trigger heightened First Amendment scrutiny and is subject only to rational basis review. *See* Mot. to Dismiss at 16. Plaintiff argues that, to the contrary, the statute is subject to heightened scrutiny because it governs "conduct with an expressive element, as distinct from pure speech." Opp'n at 19. But plaintiff gives no explanation for why subjecting or threatening to subject an employee to adverse employment action is conduct with an expressive element. If plaintiff were correct, *all* laws prohibiting retaliation or discrimination in the workforce would be subject to intermediate scrutiny. Plaintiff cites no caselaw suggesting that is the case.

But even if SB 399 were subject to intermediate scrutiny, it is constitutional. A law passes intermediate scrutiny if "it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Tiktok, Inc. v. Garland*, 145 S. Ct. 57, 67 (2025) (citation omitted). SB 399 meets this standard. First, SB 399 furthers important government interests unrelated to the suppression of speech. One such interest is the State's interest in protecting employees from employer coercion on core issues of their private identity (religious and political matters). Plaintiff contends that that this interest is not an important one because no cases have so said. But plaintiff ignores the volume of authority holding the government may protect captive audiences. *See* Mot. to Dismiss at 15-16.

Plaintiff suggests the captive audience cases are inapplicable because "[a]t-will employees are not unwilling listeners" but rather "voluntarily joined their employer and can quit at any time." Opp'n at 16-17. This argument is not persuasive. Courts have recognized that "[p]ublic transit riders are, by necessity, a

'captive audience.'" *Am. Freedom Def. Initiative v. King Cnty.*, 796 F.3d 1165, 1170 (9th Cir. 2015). So, too, have courts recognized that university students "are a 'captive audience' who may find themselves intimidated by the person who has the ability to pass upon them a poor grade." *Bonnell v. Lorenzo*, 241 F.3d 800, 819 (6th Cir. 2001). Just like the commuter who must exit their ride or the student who must risk a lower grade to avoid unwanted speech, the employee who must risk adverse employment activity to avoid unwanted speech is a captive audience.

SB 399 also furthers the State's important interest in protecting employees from coercion on politics and religion. Indeed, it would be quite odd if that interest were not an important one. "About half of Americans live in jurisdictions that protect some private employee speech or political activity from employer retaliation." Eugene Volokh, *Private Employees' Speech and Political Activity: Statutory Protection Against Employer Retaliation*, 16 Tex. Rev. L. & Pol. 295, 297 (2012). Such protections have deep roots: "many of the protections long preceded the [Civil Rights Act of 1964] . . . Indeed, the first date back to 1868." *Id.* And these laws "were likely based on the very first American laws banning employment discrimination by private employers—voter protection laws, which barred employers from discriminating against employees based on how the employees voted" and date back to the Founding Era. *Id.* Laws protecting employees from religious-based retaliation are similarly widespread. *See* James D. Nelson, *Corporate Disestablishment*, 105 Va. L. Rev. 595, 607-15 (2019) (compiling cases holding state or federal laws protect employees from religious coercion from employers). SB 399 is part of the plethora of laws that seek to ensure employees do not face coercion from employers on political or religious matters. The idea that such laws do not further an important state interest strains credulity.

Second, SB 399 does not burden substantially more speech than necessary to further that interest. Indeed, it targets precisely the conduct that implicates the State's interest: compelling an unwilling listener. The law does not prohibit an

employer from communicating with any employees who are willing to listen, and it does not sanction any speech whatsoever. Rather, it solely targets the situation where an employee has been compelled to listen against their will.

Plaintiff instead first argues that SB 399 is underinclusive. As a threshold matter, "the First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (citation omitted). As the Supreme Court has explained, "[a] State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns." *Id.* Courts "have accordingly upheld laws—even under strict scrutiny—that conceivably could have restricted even greater amounts of speech in service of their stated interests. *Id.* The Legislature noted examples of employees being forced to listen to employer speech on political and religious matters. *See* Mot. to Dismiss at 1-2. It chose to limit its action to addressing the problem that evidence demonstrated did exist. That does not render SB 399 underinclusive.

Nor is SB 399 overinclusive. Plaintiff contends that SB 399 is overinclusive because "it is not limited to mandatory meetings at which *unwilling* employees hear discussion of political or religious matters; it bans speech at such meetings even if employees would listen to it voluntarily." Opp'n at 21. Not so. SB 399 nowhere prohibits plaintiff from holding meetings for willing listeners to attend or for uttering any particular words at a meeting. All it prohibits is *sanctioning* an *unwilling* listener or otherwise *compelling* attendance. SB 399 is not overinclusive in this respect, nor does it regulate *substantially* more speech than needed to further its purpose. It therefore passes muster under intermediate scrutiny, should that standard apply.

///

///

///

## CONCLUSION

For the foregoing reasons, defendant requests the Court dismiss this case with prejudice.

Dated: June 20, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General

*/s/ Kristin A. Liska*

KRISTIN A. LISKA
Deputy Attorney General
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Case Name: ***California Policy Center, Inc. v. Lilia Garcia-Brower***
Case No.: **8:25-cv-00271-MWC-SK**

I hereby certify that on June 20, 2025, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

This declaration was executed on June 20, 2025, at San Francisco, California.

| Vanessa Jordan | Vanessa Jordan |
|---|---|
| Declarant | Signature |